UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY MAYHUE, | : |
| Plaintiff, | : Civ. No. 16-705 (PGS)(DEA) |
| v. | : |
| OFFICER NORMAN SCHACK, et al., | : **OPINION** |
| Defendants. | : |

**PETER G. SHERIDAN, U.S.D.J.**

### I. INTRODUCTION

Plaintiff, Jeffrey Mahue ("Plaintiff"), is proceeding with a second amended civil rights complaint pursuant to 42 U.S.C. § 1983 against Defendants Officer Norman Schack ("Schack") and Officer John Schultz ("Schultz") (originally incorrectly pled as "Justin Schultz") (hereinafter "Defendants"). (ECF No. 66.) Presently pending before this Court is Defendants' motion for summary judgment (ECF No. 69), Plaintiff's response (ECF No. 75), and Defendants' reply (ECF No. 76). For the following reasons, the motion for summary judgment is denied.

### II. FACTUAL AND PROCEDURAL BACKGROUND

The operative complaint in this action is Plaintiff's second amended complaint ("Amended Complaint"), which was filed on September 1, 2022. (See ECF No. 66.) The Amended Complaint raises a Fourteenth Amendment excessive

force claim against Defendant Schack and a Fourteenth Amendment failure to intervene claim against Defendant Schultz.[1] (*See id.*)

Plaintiff's claims arise from an incident that occurred on October 20, 2015, while Plaintiff was a pretrial detainee housed at Monmouth County Correctional Institution ("MCCI"). (*See* ECF No. 75-15, Pl. Stat. of Mat. Facts ("PSOMF") ¶ 1.) In or around the summer of 2015, Plaintiff was diagnosed with prostate cancer and began receiving radiation therapy from a medical facility outside of MCCI. (*Id.* ¶ 3.) On the morning of October 20, 2015, Plaintiff was taken to his medical appointment and returned to MCCI's booking unit approximately two hours later. (*Id.* ¶¶ 4-5, 10.) Plaintiff was informed that he would have to wait until officers could escort him back to his housing unit. (*Id.* ¶ 11.) Defendants were working the second shift in the Booking Unit at MCCI on that day. (*Id.* ¶ 12.)

Plaintiff waited for hours in the Booking Unit, while feeling nauseous and exhausted from his radiation therapy appointment. (*Id.* ¶¶ 14-15.) Gary Wolchensky, an inmate housed in Plaintiff's housing unit, arrived in the Booking Unit and was escorted back to the housing unit before Plaintiff. (*Id.* ¶¶ 14, 16-17.) Plaintiff questioned Defendant Schack as to why he could not be escorted back to the unit with Mr. Wolchensky. (*Id.* ¶ 18.) Defendant Schack responded that he would take

---

[1] Plaintiff's initial complaint named Monmouth County Correctional Institution as a defendant. (*See* ECF No. 1.) The Court screened the initial complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed Plaintiff's claims against Monmouth County Correctional Institution as not a "person" subject to suit under § 1983. (*See* ECF No. 8.)

Plaintiff back "when he was ready, or words to that effect." (*Id.*) Defendants agreed to escort Plaintiff back to his housing "well after 4:00 pm." (*Id.* ¶ 19.) While being escorted, Plaintiff was handcuffed behind his back and his legs were cuffed. (*Id.* ¶ 20.)

Plaintiff's and Defendants' version of events that took place during Plaintiff's escort back to his housing unit differ.

Defendants submit that "[d]uring the walk [Plaintiff] kept pulling away from [Defendant Schack's] control. When [they] got in front of the Capt's Office [Plaintiff] turned towards [Defendant Schack] in an aggressive manner. [Defendant Schack] took [Plaintiff] to the ground by grabbing him by his shoulders and pushing him to the floor." (ECF No. 69-4, Def. Stat. of Mat. Facts ("DSOMF") ¶ 7, citing ECF No. 69-1, Ex. E (Incident Report).) Defendant Schack testified at his deposition that Plaintiff:

> was very upset, yelling and screaming. Just - - he kept trying to walk away from us. He did - - he wanted to almost run back to his wing. He kept pulling away. He was just - - I don't know what he was upset about, but he was - - he seemed very upset, as I recall . . . We kept repeatedly telling him to stop pulling away and to slow down and wait for us, and that's when he - - I kept pulling him back.

(DSOMF ¶ 8, citing ECF No. 69-1, Ex. F ("Schack Depo.") at 76:12-17, 78:2-4.) Defendant Schack testified that the last time Plaintiff turned towards him, Defendant decided "it'd be safer for everybody if he went to the ground." (DSOMF ¶ 9, citing

3

Schack Depo. at 78:11-13.) Defendant Schack "grabbed him by his upper torso and pulled him to the ground," with Plaintiff landing on his back. (DSOMF ¶ 10, citing Schack Depo. at 81:9-18.) Defendant Schultz testified at his deposition that when Plaintiff turned it was to "either spit or head-butt [Defendant] Schack." (DSOMF ¶ 12, citing ECF No. 69-1, Ex. G ("Schultz Depo.") at 81:20-22.) A use of force investigation was performed on the same day and Sergeant Pulizzano concluded:

> After reviewing the video footage and all reports submitted about this incident, it is my belief that all Officers involved used the minimal amount of force need to secure [Plaintiff]. [Plaintiff's aggressive behavior as well as his refusal to obey orders during this escort, resulted in the need to secure him . . . Once [Plaintiff] was properly secure, no more force was needed or used against [Plaintiff.]

(DSOMF ¶¶ 14-15, citing ECF No. 69-1, Ex. H ("Investigating Supervisor's Report").)

Plaintiff claims that during the escort he continued to feel exhausted, unwell, nauseous, and physically and mentally drained. (PSOMF ¶ 22.) Plaintiff claims that he was not gesticulating, yelling, pulling away, running away, acting aggressively, ignoring orders, making any threats, or otherwise acting in a threatening manner. (*Id.*) While in the Captain's Hallway, a hallway in MCCI in which there are no cells or other inmates, Plaintiff explained to Defendants that he was not feeling well from treatment and that is why he wanted to return to his housing unit. (*Id.* ¶¶ 24-25.) Defendant Schack responded that Plaintiff's physical state was "not his problem"

4

and Plaintiff "slowed his walking for a brief moment and started to turn over his shoulder, in a non-threatening manner, to [Defendant] Schack to respond." (*Id.* ¶¶ 26-27.) Defendant Schack admitted in his deposition that this was the first time Plaintiff turned towards him. (*Id.* ¶ 28, citing Schack Depo. at 80:13-16.) Plaintiff submits that "[b]efore [Plaintiff] could say anything, however, [Defendant] Schack, without any warning or command, grabbed his upper shoulder/neck area and forced him, using his full strength, straight down to the concrete ground face first without attempting to stop or break his fall." (*Id.* ¶ 29, citing ECF No. 75-1 ("Plaintiff's Decl.") ¶ 12.) Defendant Schack held Plaintiff down on the concrete floor "using all of his strength." (*Id.* ¶ 33.) Defendant Schultz, who had not intervened at all, called for additional corrections officers and supervisors to respond to the scene. (*Id.* ¶ 34.) Plaintiff submits that there were no other officers or inmates in the hallway close to the parties at this time and Plaintiff's movement could not reasonably be interpreted to be disorderly or threatening. (*Id.* ¶ 35.)

Plaintiff claims there was no proper investigation, rather MCCI "gave a perfunctory review and rubberstamped Defendants' version of events." (*Id.* ¶ 51.) Plaintiff indicates that the video footage of the event was deleted an "inordinately short time period after the altercation and while the altercation was being grieved by Plaintiff. (*Id.* ¶ 52.)

5

Plaintiff was taken to the medical unit following the incident and voiced no injuries at the time and no treatment was needed. (DSOMF ¶ 17.) Plaintiff claims that he did not "voice" any injuries because he was disoriented, mentally confused, and exhausted. (PSOMF ¶ 39.) Plaintiff claims he likely suffered a concussion and lost all hearing in his left ear for a period of time, and he still suffers from partial hearing loss. (*Id.* ¶ 42, citing Plaintiff's Decl. ¶ 15.) Plaintiff submits that he required Tylenol with Codeine for a month after the altercation and he had pain in his neck, back and shoulders, "including, without limitation, an injury to his right arm that prohibited him from raising that arm above shoulder height without pain for at least two weeks." (*Id.* ¶¶ 43-44.)

Defendants filed the instant motion for summary judgment arguing for dismissal of Plaintiff's excessive force and failure to intervene claims. (ECF No. 69.) Plaintiff filed an opposition to Defendants' motion for summary judgment (ECF No. 75) and Defendants filed a reply (ECF No. 76).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents . . ., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at

7

249-50)). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). The Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

Defendants argue Plaintiff's excessive force and failure to intervene claims should be dismissed.

Initially, the Court notes that Defendants cite the wrong Amendment and wrong standard regarding Plaintiff's excessive force claim. (*See* ECF No. 69-2.) Defendants argue that Plaintiff is unable to demonstrate that the force was applied maliciously and sadistically to cause harm as required for an excessive force claim under the Eighth Amendment. (*Id.* at 12-18.) Plaintiff responded that Defendants incorrectly applied the standard relevant to an Eighth Amendment violation, when

8

Plaintiff's claim falls under the Fourteenth Amendment. (*See* ECF No. 75 at 15-17.) Defendants filed a reply brief addressing Plaintiff's excessive force claim under the Fourteenth Amendment. (*See* ECF No. 76.)

On October 20, 2015, the date of the incident alleged here, Plaintiff was a pretrial detainee housed at MCCI. (PSOMF ¶ 1.) A pretrial detainee's excessive force claim is analyzed under Fourteenth Amendment Due Process standards. *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015); *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."); *see also Bell v. Wolfish*, 441 U.S. 520 (1979); accord *Sanders v. County of Camden*, No. 15-1129, 2017 WL 3332056, at *9 (evaluating pretrial detainee's § 1983 claim that CO defendants utilized excessive force against him on January 27, 2013 under the standard announced in *Kingsley* in 2015). Defendants applied the wrong standard in their motion for summary judgment. However, the Court finds even if they had argued the proper Fourteenth Amendment standard, they would not be entitled to summary judgment.

For Plaintiff to prevail on his excessive force claim under the Fourteenth Amendment, he "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473. The issue of whether the force used was reasonable under the Fourteenth Amendment depends on the facts of the case, including "[1] the relationship between the need for the use

9

of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Robinson v. Danberg*, 673 F. App'x 205, 209 (3d Cir. 2016) (quoting *Kingsley*, 576 U.S. at 397) (alternations in original).

There is a dispute of fact as to if Defendant Schack used unreasonable force. Defendants submit deposition testimony of Defendant Schack in which Defendant alleges that Plaintiff had attempted to pull away from him and was upset, yelling, and screaming. (DSOMF ¶ 8, citing Schack Depo. at 76:12-17.) Defendant Schack also testified that he repeatedly told Plaintiff to stop pulling away and kept pulling him back. (*Id.*, citing Schack Depo. at 78:2-4.) Defendant Schack submits that the last time Plaintiff turned towards him, he decided it was safer to take him to the ground. (DSOMF ¶ 9, citing Schack Depo. at 78:11-13.) Defendant Schultz testified that he believed what Plaintiff turned to Defendant Schack it was to "either spit or head-butt [Defendant] Schack." (DSOMF ¶ 12, citing Schultz Depo. at 81:20-22.) When asked how he knew that was Plaintiff's intention, Defendant Schultz testified that he believed so based on his "experience and how [Plaintiff] was acting." (Schultz Depo. at 81:23-25.)

However, during his deposition, Plaintiff testified that on the walk back to his housing unit he was "talking to [Defendant] Schack . . [telling him, he] just came back from cancer treatment and a lot is taken out if [him]." (ECF No. 75-4, "Pl. Depo." at 28:4-6.) Plaintiff testified that Defendant Schack responded that it was not the Defendant's problem. (*Id.* at 28-7-8.) Plaintiff testified he turned to say something to Defendant Schack and was taken to the ground. (*Id.* at 28:9-13.) Plaintiff also submits that defendant Schack admitted in his deposition testimony that this was the first time Plaintiff turned towards him. (PSOMF ¶ 28, citing Schack Depo. at 80:13-16.)

Thus, Plaintiff's version of events, set forth in sworn deposition testimony and a declaration, contradicts Defendants' version and creates questions of fact regarding the relationship between the need for force and the force used, efforts to temper the amount of force, the severity of the threat, and whether Plaintiff was actively resisting. *See Robinson*, 673 F. App'x at 209 (quoting *Kingsley*, 576 U.S. at 397); *see also Lupyan v. Corinthian Colls., Inc.*, 761 F.3d 314, 320 (3d Cir. 2014) (noting that "a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment"). Considering the evidence submitted by Defendants and Plaintiff there remains an issue of fact as to whether the force used was reasonable.

11

Additionally, Defendants move for summary judgment seeking the dismissal of Plaintiff's entire Amended Complaint. However, Defendants have failed to address Plaintiff's failure to intervene claim against Defendant Schultz in any way. As such, the Court will not address Plaintiff's failure to intervene claim against Defendant Schultz.

## V. CONCLUSION

For the reasons expressed above, the Court will deny Defendants' motion for summary judgment. (ECF No. 69.) An appropriate order follows.

DATED: March 24, 2023

s/*Peter G. Sheridan*  
PETER G. SHERIDAN, U.S.D.J.